IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES S.,[1] ) <br> ) <br>     **Plaintiff,** ) <br> ) <br>   v. ) <br> ) <br> MICHELLE KING, Acting ) <br> Commissioner of Social Security,[2] ) <br> ) <br>     **Defendant.** ) <br> ) | No. 24 C 1766 <br><br> Magistrate Judge <br> Daniel P. McLaughlin |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Charles S.'s claim for Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse the Commissioner's decision [10] is denied, and the Commissioner's cross-motion for summary judgment [13] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Michelle King has been substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. PROCEDURAL HISTORY

On July 23, 2020, Plaintiff filed a claim for SSI, alleging disability since March 6, 2020. The claim was denied initially and upon reconsideration, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). A telephonic hearing was held on April 3, 2023, and all participants attended the hearing by telephone. Plaintiff appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified.

On July 6, 2023, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the application date of July 23, 2020. At step two, the ALJ concluded that Plaintiff had the following severe impairments: major depressive disorder and attention deficit hyperactivity disorder (ADHD). The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: can understand, remember, and carry out short, simple work instructions, and can sustain concentration to perform simple tasks; cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas; can use judgment to make simple work related decisions; can adapt to occasional changes in a routine work setting; can interact occasionally with coworkers and supervisors performing job duties that do not involve tandem tasks or teamwork; and should have no more than incidental contact with the public. At step four, the ALJ determined that Plaintiff has no past relevant work. At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff

3

presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.  JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even

4

in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024) (citations omitted). All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow . . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Id.* at 1054 (citations and internal quotations omitted). Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision

5

must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

## III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ's RFC assessment did not account for all of Plaintiff's limitations; (2) the ALJ erred in evaluating and rejecting the opinion of Plaintiff's treating psychiatrist; and (3) the ALJ's symptom assessment was deficient. Each argument will be addressed below in turn.

### A. The ALJ's RFC Assessment

The Court first notes that Plaintiff's entire brief largely amounts to a request that the Court reweigh the evidence. Indeed, in advancing his first argument, Plaintiff contends that the ALJ erred because "[t]he record steadily documented [Plaintiff's] limitations and subsequent struggle to perform simple tasks." ([10] at 3; *see also id.* at 4 ("Overall, this evidence indicated that [Plaintiff] could not reasonably perform simple tasks in a manner that would meet an employer's expectations required in competitive employment.").) Similarly, Plaintiff asserts that reversal is warranted because "the record steadily documented [Plaintiff's] struggles with maintaining his attention and concentration" and "the record steadily documented [Plaintiff's] struggles interacting with others." (*Id.* at 4-5.) Unfortunately for Plaintiff, reweighing the evidence is an endeavor this Court cannot undertake, so the Court must decline Plaintiff's repeated invitations to do so. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

Related to his request for a reweighing of evidence bearing upon his concentration, Plaintiff argues that the ALJ did not sufficiently account for his moderate limitation in that functional area because the ALJ "only limited [Plaintiff] to simple, routine, and repetitive work." ([10] at 2.) Plaintiff's contention fails as an initial matter because the ALJ went well beyond limiting Plaintiff to simple, routine, and repetitive work. Indeed, the ALJ further accommodated Plaintiff in specifying that he "cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas; can use judgment to make simple work-related decisions; [and] can adapt to occasional changes in a routine work setting." (R. 61.) In any event, assuming Plaintiff's argument had an accurate premise, an ALJ's use of catchall phrases (such as "simple, routine tasks") in an RFC, without more, does not necessitate remand. *See Recha v. Saul*, 843 F.App'x 1, 4 (7th Cir. 2021) (noting that the use of boilerplate language, by itself, is not reversible error). Furthermore, crucially, Plaintiff has not articulated what sort of verbiage the ALJ should have used with respect to his asserted limitations with concentration. *See Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) ("Although [the claimant] complains that the pace requirements are too vague, there is only so much specificity possible in crafting an RFC. The law required no more."). Accordingly, Plaintiff's argument concerning concentration, persistence, and pace must fail. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("It is unclear what kinds of work restrictions might address Jozefyk's limitations in concentration, persistence, or pace because he hypothesizes none.").

7

In advancing his first argument, Plaintiff also takes issue with the ALJ's evaluation of the State agency consultants' opinions. The ALJ assessed the State agency psychologists' opinions as follows:

> As for the prior administrative medical findings, the State Disability Determination Services psychologists at both the initial and reconsideration levels said the claimant retained the mental capacity to understand, remember and concentrate sufficiently in order to carry out one or two-step instructions for a normal work period and could make simple work related decisions. They said the claimant could interact with others sufficiently in a work setting with reduced social demands and would do best in a predictable, routine work setting where employment related social interactions are infrequent, brief and largely task-specific instead of collaborative. At reconsideration, the DDS psychologist said the claimant could relate appropriately in socially undemanding settings with low stress demands and only brief and superficial interactions. He said the claimant could adapt to simple changes in routine and had the capacity to be aware of and self-protective of hazards.
>
> The undersigned finds these mostly persuasive, as they were supported by citations to the claimant's performance on Dr. Langgut's exam and are consistent with Dr. Warikoo's treatment notes showing the claimant had a stable mood and cooperative behavior with unremarkable mental status exams and reported no depressive or psychotic symptoms. However, the DDS restriction to one or two-step tasks is not supported by the DDS psychologists in their reports or consistent with the evidence. The claimant testified that he was able to prepare meals and the evidence shows he was able to use public transportation and do household chores, all of which require more than two steps.

(R. 69 (citations omitted).)

In particular, Plaintiff contends that "the ALJ's RFC finding did not address the numerous moderate 'checkbox' limitations noted by the State agency reviewers." ([10] at 4.) The Court finds that argument unavailing. An ALJ "may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations." *Jane Y. v.*

8

*O'Malley*, No. 23 C 1814, 2024 WL 689993, at *6 (N.D. Ill. Feb. 20, 2024) (citation omitted). Here, the Court finds that the ALJ reasonably relied on the narratives provided by the State agency consultants. *See Brenda S. v. O'Malley*, No. 22 C 4796, 2024 WL 3105825, at *5 (N.D. Ill. June 24, 2024) ("[T]he ALJ''s treatment of the state agency psychologists' opinions was supported by substantial evidence. While the ALJ may not have explicitly explained why he did not include some of the checkbox limitations in the RFC, the Court can easily follow his reasoning from the evidence to the RFC. Specifically, the RFC tracks the narrative portion of the opinions."). Additionally, Plaintiff's argument appears to be predicated on the mistaken belief that – because the ALJ found the consultants' opinions "mostly persuasive" – he was required to adopt all of the opined limitations. That is not the case. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("[A]n ALJ must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions any of the claimant's physicians."); *Reyes v. Colvin*, No. 14 C 7359, 2015 WL 6164953, at *13 (N.D. Ill. Oct. 20, 2015) ("The rule in this circuit is that 'an ALJ may choose to adopt only parts of [a medical] opinion.'") (citations omitted). Further, the Court finds that the ALJ sufficiently explained how he assessed the consultants' opinions and why he did not adopt all of the restrictions.[3] *See Falls v. Berryhill*, No. 17 C 2805, 2018 WL 5839955, at *8 (N.D. Ill. Nov. 7, 2018) ("The ALJ's omission of the consultants' one-

---

[3] Plaintiff contends that the ALJ's reasoning vis-à-vis his daily activities was erroneous because "the record indicated that [Plaintiff] struggled completing such daily activities." ([10] at 7.) This is another impermissible request for the Court to reweigh the evidence.

9

to-two step task and 'brief and superficial' contact restrictions does not require remand. The ALJ was not obligated to adopt every restriction offered by the state agency consultants."); *Carrie B. v. Kijakazi*, No. 20-CV-5465, 2022 WL 1228194, at *3 (N.D. Ill. Apr. 26, 2022) ("The Court also rejects the Plaintiff's argument the ALJ erred in not including a limitation to 1-2 step tasks. The ALJ was not required to entirely adopt the findings of the state agency medical consultant.").

## B. The ALJ's Evaluation of the Treating Opinion Evidence

For his second argument, Plaintiff contends that the ALJ erred in evaluating the opinions of his treating psychiatrist, Dr. Warikoo. ([10] at 8-13.) Because Plaintiff filed his claim in 2020, the ALJ was required to evaluate the medical opinion evidence under regulations applicable to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c (2017). Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ is instead required to articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Factors to be considered in this evaluation include supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a); *see* 20 C.F.R. § 404.1520c(c)(2)

10

("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors. 20 C.F.R. § 404.1520c(b)(2).

In his decision, the ALJ noted Dr. Warikoo's opinions, including her determination that Plaintiff "had marked limitation in remembering locations and work-like procedures, maintaining attention and concentration for extended periods, performing activities within a schedule, working in proximity with others without undue distraction, and completing a normal workday with interruptions from psychologically based symptoms." (R. 68.) The ALJ then assessed Dr. Warikoo's opinions as follows:

> The undersigned finds this unpersuasive, as it is both unsupported by Dr. Warikoo's treatment notes and is inconsistent with the bulk of the other evidence in the record. Dr. Warikoo's own treatment notes show that the claimant only experienced hallucinations and significant paranoia when he was noncompliant with his medication. In the first few months the claimant's hospitalization in June 2020, when he was again compliant with his medication, Dr. Warikoo's mental status exams were largely normal, with no psychotic symptoms reported or evident. The claimant denied hallucinations, agitation, and paranoia. The symptoms continued to improve when the claimant was approved and started on Invega Sustenna, as detailed above. In the questionnaire, Dr. Warikoo said that the claimant had one suicide attempt that was preceded by command hallucinations telling him to hurt himself. However, the evidence from Holy Cross Hospital shows the claimant denied he stabbed himself due to command hallucinations. Additionally, while Dr. Warikoo opined the claimant had marked limitations in concentration, persistence, or pace and understanding, remembering, or applying information, her mental status exams from the months before

11

> the form was completed show unimpaired or only mildly impaired recall and attention/concentration. At those appointments, the claimant denied all depressive and psychotic symptoms and reported a stable, fair mood.
>
> Dr. Warikoo's questionnaire is also mostly inconsistent with the largely unremarkable consultative exam with Dr. Langgut. While Dr. Langgut noted some impaired long-term memory, low fund of knowledge, and impaired calculating ability, he saw no paranoia or responses to internal stimulation. Finally, Dr. Warikoo's questionnaire is inconsistent with the claimant's own testimony and behavior. At hearing, the claimant testified that his medications eliminated his paranoia and kept him from wanting to hurt himself. He denied any side effects from medication. The claimant also reported to Dr. Warikoo that he was working for his brother at his brother's demolition company. At hearing, the claimant also said that he helped people move and mowed lawns.

(R. 68 (citations omitted).)

In sum, the ALJ discounted Dr. Warikoo's opinions because they were unsupported by the doctor's own treatment notes, inconsistent with Plaintiff's mental status exams, inconsistent with Plaintiff's improvement, inconsistent with Plaintiff's testimony, and inconsistent with the consultative exam. Given the ALJ's explicit rationales, the Court finds that the ALJ properly assessed and explicated supportability and consistency in discounting Dr. Warikoo's opinions. *See* 20 C.F.R. § 404.1520c(b)(2). The Court must decline Plaintiff's invitation to reweigh the evidence in relation to Dr. Warikoo's opinions. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Accordingly, Plaintiff's second argument is unavailing.

### C. The ALJ's Symptom Assessment

For his third argument, Plaintiff contends that the ALJ's symptom assessment was erroneous. ([10] at 13-15.) Pertinent to that assertion, in his decision, the ALJ noted Plaintiff's alleged symptoms, including his allegations that

12

"he was unable to work due to bipolar disorder, schizophrenia, psychosis, major depressive disorder, and suicidal tendencies." (R. 61.) The ALJ further noted Plaintiff's allegations that "his impairments affected his abilities to stand, walk, talk, hear, see, remember, complete tasks, concentrate, understand, and follow directions." (*Id.*) However, the ALJ determined that Plaintiff's alleged symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 62.) In support of that conclusion, the ALJ stated as follows in a dedicated passage:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his . . . symptoms, they are inconsistent because the record does not support the claimant's extreme allegations. Instead, the record shows that the claimant had a stable mood and no psychotic symptoms when he was compliant with his medication. During the one acute episode where the claimant was hospitalized, he had been noncompliant with medications for months. Once the claimant switched to a long-acting injectable antipsychotic a few months after the alleged onset date, he experienced no hallucinations and almost no paranoia, despite the fact that he was not regularly seeing a dedicated therapist. His mental status exams were generally unremarkable and the claimant reported very few depressive symptoms. The claimant also denied any side effects from his medications. The record also shows that he was living independently for most of the period at issue and was contributing to the household by cooking and cleaning when he stayed with his sister.

(*Id.*)

This Court gives "the ALJ's credibility finding special deference and will overturn it only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations and citation omitted). "[P]atently wrong . . . means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted). Under that standard, the Court finds that, per the ALJ's explanation and support quoted above, the ALJ reasonably

13

determined that Plaintiff's allegations were not fully corroborated. *See Prill v. Kijakazi*, No. 21-1381, 2022 U.S. App. LEXIS 1072, at *23 (7th Cir. Jan. 13, 2022) ("Substantial evidence supports the ALJ's determination that Prill's account of her subjective symptoms was not consistent with her medical records."); *Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021) ("Because the ALJ's weighing of [claimant's] reported symptoms in the context of the whole record is supported by substantial evidence, we find no reversible error on this front either."); *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) ("[T]he ALJ's credibility determination was not 'patently wrong,' because she found [claimant] not credible for several reasons that were adequately supported by the record.") (citation omitted); *cf. Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020) ("The ALJ's rationale here was thin, but it was adequate to reflect her conclusion that the objective medical evidence and Lacher's daily activities did not corroborate his subjective symptoms.").

Plaintiff argues that the ALJ erred in assessing his daily activities in relation to his alleged symptoms. Pertinent to that assertion, the ALJ noted Plaintiff's reports that "he was able to complete his activities of daily living" and "could clean [the] house, do laundry, shop, and cook." (R. 69.) The ALJ further noted Plaintiff's reports that he "was playing video games with friends, working at his brother's demolition company, and helping his sister with household chores." (*Id.* at 70.) The Court finds no error in the ALJ's consideration of Plaintiff's daily activities. The ALJ made clear that he did not consider Plaintiff's daily activities "to be conclusive proof that the claimant could sustain full-time work activity." (*Id.*) The ALJ did not

14

improperly equate Plaintiff's daily activities with an ability to work full time. Rather, the ALJ appropriately read into Plaintiff's relatively active lifestyle that his asserted impairments were not as severe as alleged. *See Darryl S. v. Kijakazi*, No. 22 C 3827, 2023 WL 3169617, at *4 (N.D. Ill. Apr. 28, 2023).[4]

Finally, Plaintiff contends that the ALJ erred in assessing the third-party report of his case worker, Michael Farrell. The ALJ evaluated Mr. Farrell's report as follows:

> The undersigned also considered the third party function report completed by the claimant's case worker, Michael Farrell in January 2021. Mr. Farrell said the claimant could only pay attention for a few minutes and had limited reading comprehension, but could follow spoken instructions well. He said the claimant had no problems getting along with others, but isolated from others when his condition worsened. He said the claimant sometimes had episodes of diminished personal care and hygiene issues as a result of his condition. Mr. Farrell said the claimant could perform household chores and prepare simple meals. The undersigned finds this mostly unpersuasive. There are no supporting notes from Mr. Farrell with contemporaneous observations to support his statements and he noted that he only spent a few hours per month with the claimant.

(R. 69 (citations omitted).) The Court finds no error in the ALJ's evaluation of Mr. Farrell's third-party function report. As Plaintiff concedes, the ALJ was only obligated to provide a "minimal articulation [of] how nonmedical evidence, such as third-party statements, was considered." ([10] at 15.) The ALJ provided more than a

---

[4] Plaintiff argues that the ALJ did not sufficiently account for his treatment history and the difficulties he faced in performing daily activities. The Court summarily rejects those contentions because the ALJ did explicitly consider Plaintiff's difficulties and treatment throughout his decision. (*See, e.g.,* R. 60 ("[Plaintiff] said that he was afraid of traveling alone. He said he did not go out alone because he lost his way or blacked out. The claimant indicated he needed help with shopping, preparing meals, and paying bills."); *id.* at 62 ("In late 2019, the claimant started receiving psychiatric services at Mount Sinai. In October 2019, the claimant was seen for a comprehensive assessment of needs and strengths.").)

15

minimal articulation here, as he explained that the report was unsupported and based on only limited interaction with Plaintiff. Accordingly, Plaintiff's final argument is unavailing.

## CONCLUSION

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion to reverse the Commissioner's decision [10] is denied, and the Commissioner's cross-motion for summary judgment [13] is granted.

**SO ORDERED.**  **ENTERED:**

**DATE:   January 31, 2025**

**HON. DANIEL P. McLAUGHLIN**
**United States Magistrate Judge**